IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| FIDELITY & DEPOSIT COMPANY OF MARYLAND | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:04-cv-04-2841-JPM-sta |
| PEASE CONSTRUCTION, INC., LARRY J. PEASE, and DOLLY M. PEASE, | ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT PROPOSED PRETRIAL ORDER

In accord with the Pretrial Procedures of the United States District Court for the Western District of Tennessee, the parties hereby submit the following Joint Proposed Pretrial Order:

**1. Remaining Jurisdictional Issues:**

The parties are not aware of any jurisdictional issues, and the jurisdiction of this Court is not in dispute.

**2. Pending Motions:**

Plaintiff's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Docket Entry No. 26) is still pending.

**3. Summary of the Case that May be Read to the Venire at the beginning of Voir Dire:**

This case involves a claim for breach of contract. The Plaintiff claims the Defendants are obligated to reimburse it for money it paid under bonds relating to a construction project. The Defendants deny they are obligated to reimburse the Plaintiff.

The Plaintiff is Fidelity & Deposit Company of Maryland. Along with other insurance companies, it operates under the trade name "Zurich North America." The Plaintiff may be referred to during these proceedings as F&D or Zurich. Because its claims arise out of surety bonds it issued, it may also be referred to as the "Surety" or the "Bonding Company."

The Defendants are Pease Construction, Inc., Larry J. Pease, and Dolly M. Pease. Mr. & Mrs. Pease are the owners of Pease Construction, which may be referred to during these proceedings as the "Contractor," or simply "Pease."

Pease Construction entered into a contract with the Church of Jesus Christ of Latter-Day Saints for the construction of an addition to the church in Lawrenceburg, Tennessee. As part of that contract, Pease Construction was required to provide the church with certain bonds, which guaranteed that Pease Construction would pay its subcontractors and suppliers, and that it would timely and properly perform its work. At the request of Pease Construction, F&D provided those bonds.

As a condition of agreeing to issue the bonds, F&D required Pease Construction and Mr. & Mrs. Pease to execute an Agreement of Indemnity. In signing that Agreement, Pease Construction and Mr. & Mrs. Pease agreed to reimburse F&D for losses and expenses the bonding company might incur as a result of claims on the bonds.

The church became dissatisfied with the work of Pease Construction, and terminated it from the project. Pease Construction and Mr. & Mrs. Pease dispute that the church had grounds to terminate the contract. As a result of the termination, claims were made against F&D under the bonds, both by the church and the subcontractors and suppliers of Pease Construction. F&D investigated these claims, and resolved the claims that were valid. F&D paid more than $160,000.00 to investigate the claims and pay those that were valid, and now seeks

reimbursement of that money from Pease Construction and Mr. & Mrs. Pease under the Agreement of Indemnity. The Defendants do not dispute that they signed the Agreement of Indemnity. They do not dispute that F&D issued the bonds, and that claims were made against it. They do not dispute that some of the claims were valid, and that they are obligated to reimburse F&D for them. However, the Defendants dispute that some of the expenses incurred by F&D were reasonable, necessary, or covered by the bonds, and deny that they are liable to F&D for those.

4. **Contentions of the Parties:**

   (a) **Plaintiff's Contentions:**

Plaintiff contends that it is entitled to full reimbursement of all monies it has expended as a result of the claims made against it under the bonds. It is undisputed that the Defendants executed the Indemnity Agreement, and that they are bound by its terms. Plaintiff contends that all payments made to or on behalf of claimants under the Bonds were valid obligations of F&D under the bonds, and that it was necessary to pay them. Plaintiff further contends that all expenses incurred in its investigation and resolution of the claims made against it were reasonable and necessary. All such payments were made in good faith under the belief that F&D was liable for such sums, or that it was necessary or expedient to make such disbursements, including expenses. Pursuant to the Agreement of Indemnity, Plaintiff is expressly entitled to recover these losses, totaling $163,795.75, from Defendants, including attorneys fees incurred in the prosecution of this action.

   (b) **Defendants' Contentions:**

Defendants contend that F&D incurred unnecessary, duplicative and excessive costs with respect to the costs and expenses it incurred in connection with the performance bond issued for

the Project. Pease intends to prove that none of these costs and expenses in connection with the performance bond were incurred by F&D in the actual performance of F&D's duties and obligations under the bond, and instead were incurred for the purpose posturing F&D for a beneficial settlement with the Church. Pease also intends to prove that some, all or a portion of these costs and expenses were for work that was outside of the scope of Pease Construction Inc.'s (hereinafter "PCI") original Contract with the Church, and outside of the scope of the performance bond. Pease further contends that there were ample contract sums available for the Church to complete the Project, and/or to repair and/or replace other work which the Church claimed was deficient and/or defective. Prior to incurring any expenses in connection with the bonds, F&D's own consultant opined that the Project was approximately ninety-five percent (95%) complete. For these reasons, F&D is not entitled to recover all of the damages it seeks from the Defendants.

## 5. Uncontested Facts:

1. On or about October 21, 1998, Defendants executed an Agreement of Indemnity in favor of F&D and others. Defendants executed the Agreement of Indemnity in order to induce F&D to evaluate and consider the issuance of various surety bonds on behalf of Pease Construction. In executing the Agreement of Indemnity, each Defendant acknowledged that they had "a substantial, material and beneficial interest in the obtaining of" such bonds.

2. In executing the Agreement of Indemnity, Defendants agreed, in part, as follows:

> SECOND: the Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified [F&D] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which [F&D] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to [F&D] by the Contractor and Indemnitors as soon as liability exists or is asserted against [F&D], whether or not [F&D] shall have

362976

4

made any payment therefor. Such payment shall be equal to the amount of the reserve set by [F&D]. . . .

3. Pease Construction entered into a contract with The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints ("Church") for the Lawrenceburg Ward Addition ("Project"). A requirement of that contract was that Pease Construction provide the Church with payment and performance bonds.

4. Pease Construction requested these bonds from Plaintiff. In reliance upon the Agreement of Indemnity, and for other good and valuable consideration, Plaintiff issued Payment Bond and Performance Bond Nos. 8040476, naming Pease Construction as principal, F&D as surety, and the Church as obligee, each in the penal sum of $1,527,175.00 (the "Bonds").

5. The Church declared Pease Construction in default and terminated it in connection with the Contract. Pease Construction disputed that cause existed for the Church to terminate it. As a result of the termination, performance and payment claims were made against F&D under the Bonds.

6. In resolution of issues surrounding the termination and certain claims made against Plaintiff under the Bonds, Pease Construction, the Church, and F&D entered into a settlement agreement. Pursuant to that agreement, Pease Construction and F&D agreed to resolve certain claims of suppliers and subcontractors relating to the Project, including claims asserted by Rogers Group, Inc. ("Rogers Group"), Abernathy Concrete Co., Inc. ("Abernathy"), and Girtman & Associates, Inc. ("Girtman").

7. Rogers Group, Abernathy, and Girtman all asserted claims against F&D under the Payment Bond, and filed suit to enforce their claims. F&D settled the Rogers Group and Abernathy claims for $48,000.00 and $8,200.00, respectively. Pease Construction consented to

both of these settlements. Pease Construction would not consent to settlement of the Girtman claim and suit. That claim was tried, and judgment was entered in favor of Girtman and against F&D and Pease Construction for $2,974.17, plus costs. In addition, Girtman was awarded a lien against the Church property. Pease Construction did not satisfy the judgment, and F&D paid $2,974.17 to satisfy the judgment and secure release of the lien. F&D also paid $248.50 to satisfy the court costs assessed against Pease Construction and it. F&D incurred expenses in investigating, defending, and resolving those claims.

8. The Church also asserted claims against under F&D under the Performance Bond. As a result, F&D retained the services of W.G. Yates & Sons Construction Company, Inc. and Nicholson Professional Consulting, Inc., to assist it in investigation and resolution of those performance issues and claims.

9. F&D has paid incurred loss and expense, to date, of $69,880.44 on account of payment bond claims and $93,916.31 on account of performance bond claims, for a total loss of $163,796.75.

10. Despite requests, the Defendants have failed and refused to reimburse F&D for the aforesaid loss and expense it has sustained by reason of having executed and delivered the Bonds.

11. As of September 19, 2002, a representative of F&D's consultant, W.G. Yates & Sons Construction, Co., advised F&D that the Project was ninety-five percent (95%) complete.

12. As of approximately September 19, 2002, representatives from Yates advised F&D that the estimated cost to repair certain punchlist and related items on the Project was the sum of $29,000.00.

13. PCI disputed the Church's right to terminate it from the Project, and claimed that said termination was wrongful.

14. As of November 18, 2002, the Church was still in possession of contract funds that were owed to PCI, along with retainage withheld from previous payments to PCI, in the total amount of $230,217.06.

15. In October and November, 2002, F&D was in possession of documents from both the Church and its consultants which indicated that the Project was close to completion as of this time period.

16. On November 4, 2002, the Church made a formal claim with F&D against the Performance Bond in accordance with Sections 3.2 and 3.3 of the Performance Bond.

### 6. Contested Issues of Fact:

1. Whether the costs incurred by F&D in connection with the performance bond were properly covered under the performance bond.

2. Whether F&D performed any work in connection with the performance bond in response to the Church's claim against said bonds.

3. Whether F&D performed work outside the scope of the Church's contract with PCI.

4. Whether the costs incurred by F&D in connection with the performance bond were reasonable, and necessary and otherwise incurred in good faith.

5. Whether F&D procured a favorable settlement from the Church in connection with its acts and failures to act in connection with the performance bond claims.

6. Whether F&D took any action in accordance with Section 4 of the Performance Bond with respect to the Church's claim.

## 7.     Contested Issues of Law:

1.     Whether F&D incurred costs and expenses in connection with the Performance bond, or for work outside the scope of the underlying contract for which the bonds were issued.

2.     Whether F&D is entitled to reimbursement under the Agreement of Indemnity for the costs incurred under the performance bond when F&D failed to perform any of the functions required of it under said bond.

## 8.     Exhibit Lists:

A.     Plaintiff expects to introduce the following exhibits, to which the parties have stipulated as admissible, at trial:

1.     General Agreement of Indemnity dated October 21, 1998 (Exhibit A to Complaint);

2.     Performance and Payment Bonds No. 8040476 (Exhibit B to Complaint);

3.     Order of Judgment entered May 24, 2004 in *Girtman & Associates, Inc. v. Pease Construction, Inc., et al*, Lawrence County Chancery Court No. 11269-03;

4.     Check to Girtman & Associates in satisfaction of Order of Judgment;

5.     Bill of Costs issued by Lawrence County Clerk & Master in *Girtman* suit;

6.     Check to Lawrence County Clerk & Master in satisfaction of Bill of Costs;

7.     Proof of Claim submitted to Plaintiff by Abernathy Concrete Co, Inc.;

8.     Release, Assignment & Subrogation Agreement executed by Abernathy Concrete Co, Inc.;

9.     Check to Abernathy Concrete Co., Inc. in settlement of claim;

10. March 17, 2004 e-mail from Larry Pease to Toby Pilcher re: Abernathy Concrete claim;

11. Correspondence from Toby Pilcher to Larry Pease dated March 22, 2004 re: Abernathy Concrete and Rogers Group claims;

12. Correspondence from Toby Pilcher to Larry Pease dated July 15, 2003 re: Rogers Group claim and suit;

13. Verified Complaint filed in *Rogers Group, Inc. v. Pease Construction, Inc., et al.*, Lawrence County Chancery Court No. 11418-03, filed May 30, 2003;

14. Correspondence from Dan Puryear to Toby Pilcher dated November 12, 2003 regarding Rogers Group suit and claim;

15. Correspondence from Toby Pilcher to Daniel Puryear dated March 5, 2004 regarding Rogers Group suit;

16. Release, Assignment & Subrogation Agreement executed by Rogers Group, Inc.;

17. Check paid to Rogers Group in satisfaction of settlement;

18. Correspondence from Lorin Barker to Toby Pilcher dated March 21, 2002;

19. Correspondence from Lorin Barker to Adam Nahmias dated November 4, 2002 re: termination;

20. Correspondence from Loren Barker to Toby Pilcher dated November 4, 2002 re: termination;

21. Site Visit Report (January 7, 9, and 13, 2003) prepared by W.G. Yates & Sons Construction Company, Inc. ("Yates");

22. Project Summary prepared by Yates;

23. December 2, 2002 cost estimate;

24. March 11, 2003 scope of work and cost estimate from Yates;

25. Invoices from Yates for services rendered relating to the payment and performance bonds;

26. Checks to Yates in payment of invoices;

27. Invoices from Nicholson Professional Consulting, Inc. for services rendered relating to the payment of performance bonds;

28. Checks to Nicholson in payment of invoices;

29. Invoices from Manier & Herod to Plaintiff for services rendered relating to the payment and performance bonds and in enforcement of the Indemnity Agreement which is the subject of this action;

30. Checks to Manier & Herod in payment of invoices;

31. Agreement & Release between Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, Plaintiff, and Pease Construction, Inc.; and

32. Accounting of Plaintiff's loss.

33. Correspondence from Ken Lewter to Larry Pease dated September 12, 2002 w/ list of deficiencies;

34. Correspondence from Lorin Barker to Toby Pilcher dated September 12, 2002;

35. Correspondence from Lorin Barker to Toby Pilcher dated September 13, 2002 re: deficiencies;

36. Correspondence from Ken Lewter to Lorin Barker dated October 25, 2002 re: cost estimate and punchlist;

362976

10

37. February 17, 2003 report from Lin Heath to John Gillum, et al., with attached scope of work and cost estimate;

38. March 11, 2003 scope of work and cost estimate from Yates;

39. Complaint filed February 27, 2003 in *Girtman* suit;

40. Amended Complaint filed January 23, 2004 in *Girtman* suit;

41. Notice of Partial Satisfaction of Judgment filed July 15, 2004 in *Girtman* suit;

42. Release of Lien executed by Girtman & Associates, Inc.;

43. Complaint filed February 23, 2004 in *Abernathy Concrete, Inc. v. The Church of Jesus Christ of Latter-Day Saints, et al.*, Giles County Chancery Court No. 2831 (filed April 30, 2004);

44. Order of Dismissal in *Abernathy Concrete* suit, entered April 26, 2004; and

45. Correspondence from Toby Pilcher to Daniel Puryear dated July 15, 2004 regarding Rogers Group suit.

46. F&D Summary Accounting of Loss.

**B.     Defendant Expects to Introduce the following exhibits at trial:**

1. Correspondence from counsel for PCI, to counsel for the Church dated October 17, 2002, regarding possible termination for convenience.

2. Correspondence from Yates to F&D dated September 19, 2002, regarding the Project.

3. Correspondence from counsel for PCI, to counsel for the Church dated November 5, 2002, claiming that the Church wrongfully terminated PCI.

4.   E-mail from counsel for the Church to F&D dated November 18, 2002, regarding contract balances being held by the Church at the time of termination.

5.   F&D fax cover page dated November 4, 2002, regarding the validity of some of the claims being asserted by the Church.

6.   Report from Michael Engineering, LLC regarding status of the work.

7.   Construction Project Progress Report from the Church dated October 23, 2002.

8.   Correspondence from F&D to counsel for the Church dated November 19, 2002, regarding status of the claim.

9.   F&D correspondence to counsel for the Church dated December 17, 2002, regarding change order work.

10.   Correspondence from Yates to F&D dated December 16, 2002, regarding change order work.

11.   Correspondence from counsel for PCI to F&D dated January 14, 2003, regarding change order work.

12.   Correspondence from F&D to counsel for the Church dated March 17, 2003, regarding the Church self performing work.

13.   Correspondence from Pease Construction, Inc., to its counsel dated March 7, 2003, regarding use of Yates on the Project.

14.   Correspondence to F&D from counsel for the Church dated November 4, 2002, making claim against the performance bond.

15.   Some, all or a portion of Exhibits identified by Plaintiffs.

16.   Some, all or a portion of the documents in the file of Gene Mathis.

9. **Witness Lists:**

   A. **Plaintiff's Witnesses:**

   1. Plaintiff expects to present the following witnesses at trial:

      a. Toby Pilcher
         Zurich North America
         3910 Keswick Road
         Baltimore, MD 21297
         (800) 656-5155

      b. Lawrence Dow
      c. David Walker
         W.G. Yates & Sons Construction Co.
         5050 Poplar Avenue, Suite 634
         Memphis, TN 38157
         (901) 761-0010

      d. Lin Heath
         Nicholson Professional Consulting
         500 Sun Valley Drive, Ste H-4
         Roswell, GA 30076.
         (770) 645-1171

   2. Plaintiff may call the following witnesses, if the need arises:

      a. Greg Hnedak
      b. Ike Tarver
         W.G. Yates & Sons Construction Co.
         5050 Poplar Avenue, Suite 634
         Memphis, TN 38157
         (901) 761-0010

      c. Bob Waldrip
      d. Ken Lewter
         Joyce, Prout & Associates
         104 Southside Square
         Huntsville, AL 35801
         (256) 539-9647

      e. Jerry Morris
      f. Les Hartman

    Director for Temporal Affairs Presiding Bishopric Office -- Atlanta
    4823 North Royal Atlanta Drive
    Tucker, GA 30084
    (770) 493-7200

g. Larry Pease
h. Dolly Pease
  989 Fair Oaks Drive
  Collierville, TN 38017
  (901) 853-0079

i. Ken Michaels
  Michaels Engineering, LLC
  1804 Pinehurst Lane
  Birmingham, AL 35226
  (205) 979-1232

j. Allen Boydston
  Ray Engineering Group, LLC
  1833 Alton Road, Suite 100
  Birmingham, AL 35210
  (205) 956-4748

k. Gordon Dunn
  Qualls Engineering
  100 Washington, Ste 106
  Huntsville AL 35801
  (256) 551-0407

l. William Abernathy
  Abernathy Concrete, Inc.
  734 South First St.
  Pulaski, TN 38478
  (931) 363-1527

m. Matthew Harris
  Girtman & Associates, Inc.
  7115 Cockrill Bend Blvd.
  Nashville, TN 37209
  (615) 350-6000

n. Deborah Abarientos
  Rogers Group, Inc.
  421 Great Circle Rd.
  Nashville, TN 37228
  (615) 242-0585.

B.  Defendants Witnesses:

1. Defendants expect to present the following witnesses at trial.

   a.  Larry Pease
       989 Fair Oaks Drive
       Collierville, TN 38017
       (901)-853-0079

   b.  Gene Mathis
       MENARD, GATES & MATHIS, INC.
       6401 Poplar Avenue, Suite 250
       Memphis, TN 38119
       (901)

2. Defendant may call the following witnesses, if the need arises:

   a.  Toby Pilcher
       Zurich North America
       3910 Keswick Road
       Baltimore, MD 21297
       (800)-656-5155

   b.  Lawrence Dow
       David Walker
       W.G. Yates & Sons Construction, Co.
       5050 Poplar Aveue
       Suite 634
       Memphis, TN 38157
       (901) 761-0010

   c.  Lin Heath
       Nicholson Professional Consulting
       500 Sun Valley Drive
       Suite H-4
       Roswell, GA 30076
       (770) 645-1171

   d.  Gene Mathis
       MENARD, GATES & MATHIS, INC.
       6401 Poplar Avenue, Suite 250
       Memphis, TN 38119
       (901)

   e.  Lorin Barker
     KIRTON & McCONKIE
     60 E. South Temple
     Suite 1800
     Salt Lake City, Utah 84111
     (  )

**10. Deposition Testimony:**

The parties do not intend to present any witnesses by way of deposition.

**11. Estimated Length of Trial:**

The parties estimate that the trial will last two days.

**12. This case is a jury trial.**

**13. Damages**:

Plaintiff seeks recovery of $163,796.75, plus attorneys' fees and expenses. In addition, Plaintiff seeks prejudgment interest from the date of loss through the date of judgment.

**14. Attorneys of Record.**

  John M. Gillum
  Brett A. Oeser
  Philip L. Robertson
  MANIER & HEROD
  150 Fourth Avenue North
  Suite 2200
  Nashville, TN 37219
  Attorneys for Plaintiff

  Adam Nahmias
  JACKSON, SHIELDS, YEISER & HOLT & SPEAKMAN
  262 German Oaks Drive
  Cordova, Tennessee 38018
  Attorney for Defendants

Copies of the letterhead for each of the firms are attached hereto as *Collective Exhibit A.*

**15. A/V Equipment:**

362976            16

The parties do not intend to use any such equipment at trial.

ENTER: _____ Nov. 15, 2005 _____

_____ /s/ Jon P. McCalla _____
United States District Judge

SUBMITTED FOR ENTRY:

_____ Brett Oeser by permission /s/ _____
John M. Gillum #10230
Brett A. Oeser #16238
Philip L. Robertson #21668
MANIER & HEROD
150 Fourth Avenue North
Suite 2200
Nashville, TN 37219
(615) 244-0030

Attorneys for Plaintiff

_____ Adam Nahmias by /s/ _____
Adam M. Nahmias #16227
JACKSON, SHIELDS, YEISER & HOLT & SPEAKMAN
262 German Oaks Drive
Cordova, TN 38018
(901) 754-8001
Attorneys for Defendants

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 42 in case 2:04-CV-02841 was distributed by fax, mail, or direct printing on November 15, 2005 to the parties listed.

---

John M. Gillum
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Brett A. Oeser
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Adam M. Nahmias
JACKSON SHIELDS YEISER HOLT SPEAKMAN & LUCAS
262 German Oak Dr.
Memphis, TN 38018

Honorable Jon McCalla
US DISTRICT COURT